# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ADAM HILLS, ALAN MARTINEAU, ALBERT MARTIN, ALEX MADRID AMAYA, ALFRED DE LA O, AMANDA HERNÁNDEZ, AMANDA DURRANT, AMY MASTROMARINO, ANASTASIA ISBORN, ANGELO MILAZZO, ANNETTE BLACKWELL, ANNETTE JIMÉNEZ, ASHLEY ROLL, BENJAMIN BARTON, BRENT COOPER, BUTCH GARCÍA, CATHY OSBORN,  CHARLIE ROCHA ROSAS, CHRISTOPHER GRANT, CLESIA MOORE, CLINT OSTENBERG, CRUZ MORA, DANIEL BICE JR., DANIEL FRASQUILLO, DARBY CASTILLE, DARREL WILLIS, DEBORAH MUNGER, DESIRAE SÁNCHEZ, DONALD LEWIS, DYLAN STOCKNER, ELIZABETH REYNOLDS, ENRIQUE FLORES, ENRIQUE LÓPEZ, ERIC LÓPEZ, ERICA DOMÍNGUEZ, ERIK MORALES, EVA KENNY, FRANK SILVA, GLENN WILSON, GLORIA BACA, GLORIA WILLIAMS, JACQUELINE GALLEGOS, JAMIE SCHLICHTING, JENIFER ALEXANDER, JIMMIE TARKINGTON, JON LETOURNEAU, LARRY LOCKHART, MARK MASON, RANDY EVANS, RONNIE SIDWELL, TERESA LOWE, TIMOTHY COTTRILL *and* YVONNE ZICKEFOOSE,

     *Plaintiffs,*

v.

3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company);
AGC CHEMICALS AMERICAS, INC.;
AMEREX CORPORATION;
ARCHROMA U.S., INC.;
ARKEMA INC.;

Civil Action No.: _____


COMPLAINT AND DEMAND FOR JURY TRIAL

**BASF CORPORATION;**
**BUCKEYE FIRE EQUIPMENT**
**COMPANY;**
**CARRIER GLOBAL CORPORATION;**
**CHEMDESIGN PRODUCTS, INC.;**
**CHEMGUARD, INC.;**
**CHUBB FIRE, LTD.;**
**CLARIANT CORPORATION;**
**CORTEVA, INC.;**
**DUPONT DE NEMOURS INC. (f/k/a**
**DOWDUPONT, INC.);**
**DYNAX CORPORATION;**
**E.I. DUPONT DE NEMOURS AND**
**COMPANY, individually and as successor**
**in interest to DuPont Chemical Solutions**
**Enterprise;**
**KIDDE PLC;**
**NATIONAL FOAM, INC.;**
**RAYTHEON TECHNOLOGIES**
**CORPORATION;**
**THE CHEMOURS COMPANY,**
**individually and as successor in interest to**
**DuPont Chemical Solutions Enterprise;**
**THE CHEMOURS COMPANY FC, LLC,**
**individually and as successor in interest to**
**DuPont Chemical Solutions Enterprise;**
**TYCO FIRE PRODUCTS L.P.;**
**UNITED TECHNOLOGIES**
**CORPORATION;** *and*
**UTC FIRE & SECURITY AMERICAS**
**CORPORATION, INC.,**

     *Defendants.*

---

Plaintiffs ADAM HILLS, ALAN MARTINEAU, ALBERT MARTIN, ALEX MADRID

AMAYA, ALFRED DE LA O, AMANDA HERNÁNDEZ, AMANDA DURRANT, AMY

MASTROMARINO, ANASTASIA ISBORN, ANGELO MILAZZO, ANNETTE

BLACKWELL, ANNETTE JIMÉNEZ, ASHLEY ROLL, BENJAMIN BARTON, BRENT

COOPER, BUTCH GARCÍA, CATHY OSBORN,   CHARLIE ROCHA ROSAS, CHRISTOPHER GRANT, CLESIA MOORE, CLINT OSTENBERG, CRUZ MORA, DANIEL BICE JR., DANIEL FRASQUILLO, DARBY CASTILLE, DARREL WILLIS, DEBORAH MUNGER, DESIRAE SÁNCHEZ, DONALD LEWIS, DYLAN STOCKNER, ELIZABETH REYNOLDS, ENRIQUE FLORES, ENRIQUE LÓPEZ, ERIC LÓPEZ, ERICA DOMÍNGUEZ, ERIK MORALES, EVA KENNY, FRANK SILVA, GLENN WILSON, GLORIA BACA, GLORIA WILLIAMS, JACQUELINE GALLEGOS, JAMIE SCHLICHTING, JENIFER ALEXANDER, JIMMIE TARKINGTON, JON LETOURNEAU, LARRY LOCKHART, MARK MASON, RANDY EVANS, RONNIE SIDWELL, TERESA LOWE, TIMOTHY COTTRILL and YVONNE ZICKEFOOSE, (collectively "Plaintiffs") by and through their attorneys of record, allege as follows:

## COMPLAINT

Plaintiffs bring this action against Defendants: 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company); AGC CHEMICALS AMERICAS, INC.; AMEREX CORPORATION; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CHUBB FIRE, LTD.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS INC. (f/k/a DOWDUPONT, INC.); DYNAX CORPORATION; E.I. DUPONT DE NEMOURS AND COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; KIDDE PLC; NATIONAL FOAM, INC.; RAYTHEON TECHNOLOGIES CORPORATION; THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; THE CHEMOURS COMPANY FC, LLC, individually and as successor in interest to

DuPont Chemical Solutions Enterprise; TYCO FIRE PRODUCTS L.P.; UNITED TECHNOLOGIES CORPORATION; and UTC FIRE & SECURITY AMERICAS CORPORATION, INC. (collectively "Defendants"), and allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.      This is an action for damages due to Plaintiffs relating to Defendants' development, marketing, release, training users of, instructional materials, warnings, sale, handling, and use in connection with Aqueous Film-Forming Foam ("AFFF") containing Perfluorooctanoic Acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorononanoic acid ("PFNA"), Perfluorohexanesulfonic acid ("PFHxS"), Perfluorobutanesulfonic acid ("PFBS"), Hexafluoropropylene Oxide ("HFPO", also known as "Gen-X"), and / or their precursors and derivatives, and other fluorochemicals.  For purposes of this Complaint, AFFF and the per- and polyfluorinated compounds described in this paragraph will be referred to collectively as "fluorochemical products."

2.      Defendants failed to warn users and consumers of their fluorochemical products' persistence, bioaccumulation, and toxic properties, as well as the fluorochemical products' propensity to contaminate water supplies, which was known or knowable to the Defendants.

3.      All Defendants were involved in the development, marketing, release, training users of, instructional materials, warnings, sale, handling, and use in connection with the fluorochemical products and the AFFF to which Plaintiffs were exposed.

4.      Defendants marketed, developed, released, trained users of, produced instructional materials for, sold and/or otherwise handled and/or used fluorochemical products, including AFFF, in such a way as to result in the contamination of Plaintiffs' public drinking water supplies.

5.    This action seeks compensatory and punitive damages, costs incurred and to be incurred by Plaintiffs, and any other damages that the Court or jury may deem appropriate, arising from the intentional, malicious, knowing, reckless and/or negligent acts and/or omissions of Defendants in connection with the contamination of the Plaintiffs' drinking water supply with Defendants' fluorochemical products to which Plaintiffs were exposed.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00.

7.    The United States District Court for the Western District of Pennsylvania has personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted, used and/or otherwise sold fluorochemical products, including AFFF, to various locations, such that each Defendant knew or should have known that said products would be delivered and used to areas in the state of Pennsylvania for active use by firefighters and other users during the course of training and firefighting activities and that the aforementioned chemicals would seep into the ground and/or contaminate water sources used for public consumption.

8.    Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the Western District of Pennsylvania does not offend traditional notions of fair play and substantial justice.

**PARTIES TO THE ACTION**

**PLAINTIFFS**

9.       Plaintiff, ADAM HILLS, is a citizen of the United States of America and a current resident of Colorado Springs, Colorado. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

10.       Plaintiff, ALAN MARTINEAU, is a citizen of the United States of America and a current resident of Hemet, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

11.       Plaintiff, ALBERT MARTIN, is a citizen of the United States of America and a current resident of Folsom, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

12.    Plaintiff, ALEX MADRID AMAYA, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

13.    Plaintiff, ALFRED DE LA O, is a citizen of the United States of America and a current resident of Corna, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

14.     Plaintiff, AMANDA HERNÁNDEZ, is a citizen of the United States of America and a current resident of Sacramento, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

15.     Plaintiff, AMANDA DURRANT, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

16.     Plaintiff, AMY MASTROMARINO, is a citizen of the United States of America and a current resident of Marana, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

17.     Plaintiff, ANASTASIA ISBORN, is a citizen of the United States of America and a current resident of Fair Oaks, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

18.     Plaintiff, ANGELO MILAZZO, is a citizen of the United States of America and a current resident of Santa Cruz, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

19.    Plaintiff, ANNETTE BLACKWELL, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

20.    Plaintiff, ANNETTE JIMÉNEZ, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

21.    Plaintiff, ASHLEY ROLL, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply.

Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

22.    Plaintiff, BENJAMIN BARTON, is a citizen of the United States of America and a current resident of Shaftsbury, Vermont. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

23.    Plaintiff, BRENT COOPER, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

24.    Plaintiff, BUTCH GARCÍA, is a citizen of the United States of America and a current resident of Phoenix, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

25.    Plaintiff, CATHY OSBORN, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

26.    Plaintiff, CHARLIE ROCHA ROSAS, is a citizen of the United States of America and a current resident of Los Angeles, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

27.     Plaintiff, CHRISTOPHER GRANT, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

28.     Plaintiff, CLESIA MOORE, is a citizen of the United States of America and a current resident of Los Angeles, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

29.     Plaintiff, CLINT OSTENBERG, is a citizen of the United States of America and a current resident of Sacramento, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

30.     Plaintiff, CRUZ MORA, is a citizen of the United States of America and a current resident of Live Oak, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

31.     Plaintiff, DANIEL BICE JR, is a citizen of the United States of America and a current resident of Marana, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

32.     Plaintiff, DANIEL FRASQUILLO, is a citizen of the United States of America and a current resident of Seattle, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

33.     Plaintiff, DARBY CASTILLE, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

34.    Plaintiff, DARREL WILLIS, is a citizen of the United States of America and a current resident of Colorado Springs, Colorado. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

35.    Plaintiff, DEBORAH MUNGER, is a citizen of the United States of America and a current resident of Sacramento, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

36.    Plaintiff, DESIRAE SÁNCHEZ, is a citizen of the United States of America and a current resident of Colorado Springs, Colorado. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

37.     Plaintiff, DONALD LEWIS, is a citizen of the United States of America and a current resident of Fresno, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

38.     Plaintiff, DYLAN STOCKNER, is a citizen of the United States of America and a current resident of Waverly, West Virginia. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

39.    Plaintiff, ELIZABETH REYNOLDS, is a citizen of the United States of America and a current resident of Sacramento, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

40.    Plaintiff, ENRIQUE FLORES, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

41.    Plaintiff, ENRIQUE LÓPEZ, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

42.    Plaintiff, ERIC LÓPEZ, is a citizen of the United States of America and a current resident of Perris, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer and Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

43.    Plaintiff, ERICA DOMÍNGUEZ, is a citizen of the United States of America and a current resident of Rancho Cordova, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

19

including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

44.     Plaintiff, ERIK MORALES, is a citizen of the United States of America and a current resident of Orange, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

45.     Plaintiff, EVA KENNY, is a citizen of the United States of America and a current resident of Murrita, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

46.     Plaintiff, FRANK SILVA, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply.

Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

47.    Plaintiff, GLENN WILSON, is a citizen of the United States of America and a current resident of Sacramento, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

48.    Plaintiff, GLORIA BACA, is a citizen of the United States of America and a current resident of Sacramento, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

49.    Plaintiff, GLORIA WILLIAMS, is a citizen of the United States of America and a current resident of Washington, West Virginia. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

50.    Plaintiff, JACQUELINE GALLEGOS, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

51.    Plaintiff, JAMIE SCHLICHTING, is a citizen of the United States of America and a current resident of Anaheim, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

52.    Plaintiff, JENIFER ALEXANDER, is a citizen of the United States of America and a current resident of Colorado Springs, Colorado. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

53.    Plaintiff, JIMMIE TARKINGTON, is a citizen of the United States of America and a current resident of Tucson, Arizona. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

54.    Plaintiff, JON LETOURNEAU, is a citizen of the United States of America and a current resident of Cumberland, Rhode Island. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

55.    Plaintiff, LARRY LOCKHART, is a citizen of the United States of America and a current resident of Parkersburg, West Virginia. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

56.    Plaintiff, MARK MASON, is a citizen of the United States of America and a current resident of Parkersburg, West Virginia. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

57.     Plaintiff, RANDY EVANS, is a citizen of the United States of America and a current resident of Galt, California. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

58.     Plaintiff, RONNIE SIDWELL, is a citizen of the United States of America and a current resident of Parkersburg, West Virginia. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries

including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

59.    Plaintiff, TERESA LOWE, is a citizen of the United States of America and a current resident of Marietta, Ohio. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Ulcerative Colitis which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

60.    Plaintiff, TIMOTHY COTTRILL, is a citizen of the United States of America and a current resident of Parkersburg, West Virginia. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Testicular Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

61.    Plaintiff, YVONNE ZICKEFOOSE, is a citizen of the United States of America and a current resident of Lakeland, West Virginia. Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's

drinking water supply. Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products. Plaintiff was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. As a direct and proximate result, Plaintiff has suffered from injuries including Kidney Cancer which has caused Plaintiff to undergo medical treatment and to suffer, and continue to suffer, severe personal injuries, pain, emotional distress, and economic loss.

## DEFENDANTS

62.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

63.      Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

64.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of defendants, and did so while acting within the scope of their duties, employment or agency.

65.     At all times relevant to this litigation, upon information and belief, each of the defendants designed, developed, manufactured, marketed and/or sold fluorochemical products used throughout the country, including areas where Plaintiffs have resided.

66.     Each of the Defendants designed, developed, manufactured, marketed and/or sold fluorochemical products to which Plaintiffs were exposed and directly and proximately caused

Plaintiffs to develop the injuries listed in Paragraphs 9 through 61 of Plaintiffs' Complaint, and to suffer severe personal injuries, pain, suffering, emotional distress, and economic loss.

67.     **Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company)** ("3M") is a Delaware Corporation and conducts business throughout the United States, with its principal place of business located at 3M Center, St. Paul Minnesota 55144.

68.     3M Company designed, developed, manufactured, distributed, released, trained users of, produced instructional materials on, promoted, marketed and/or sold fluorochemical products from the 1960s until 2002.

69.     **Amerex Corporation** ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

70.     Amerex made, manufactured, distributed, marketed, and/or sold fluorochemical products.

71.     **Tyco Fire Products L.P.** ("Tyco") is a limited partnership organized under the laws of Pennsylvania, with its principal place of business at 1400 Pennbrook Parkway, Landsdale, Pennsylvania 19446.

72.     Upon information and belief, Tyco is a wholly owned subsidiary of Johnson Controls International PLC, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

73.     Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990. Beginning in or around 1975, Ansul manufactured and/or distributed and sold AFFF and fluorochemical products.

74.     After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute and sell AFFF that contained fluorochemical products.

75.     Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF and fluorochemical products through its Chemguard Specialty Chemicals division.

76.     **Chemguard, Inc.** is a corporation organized and existing under the laws of Texas, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

77.     Upon information and belief, Chemguard is a subsidiary of Johnson Controls International PLC, and was acquired by Tyco International Ltd. in 2011.

78.     Beginning in or around 1994, Chemguard manufactured, distributed, marketed and/or sold AFFF containing fluorochemical products.

79.     **ChemDesign Products, Inc.** is a corporation organized and existing under the laws of Texas and having a principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

80.     ChemDesign Products, Inc. manufactured fluorochemical products for Tyco/Chemguard AFFF products.

81.     **Buckeye Fire Equipment Company** ("Buckeye") is a corporation organized and existing under the laws of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

82.     Buckeye manufactured, distributed, and/or sold AFFF containing fluorochemical products.

83.     **Kidde PLC** is a Delaware corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde PLC has its principal

place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

84.    Kidde PLC made, manufactured, distributed, marketed, and/or sold fluorochemical products.

85.    **United Technologies Corporation** ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

86.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users of, produced instructional materials on, sold and/or otherwise handled and/or used fluorochemical products.

87.    **UTC Fire & Security Americas Corporation, Inc.** ("UTC") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418.

88.    Upon information and belief, UTC was a division of United Technologies Corporation. UTC does and/or has done business throughout the United States and manufactured and sold fluorochemical products.

89.    **Raytheon Technologies Corporation** ("Raytheon Technologies") is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business located at 1000 Wilson Boulevard in Arlington, Virginia 22209. Raytheon does and/or has done business throughout the United States and manufactured and sold PFAS and/or AFFF containing PFAS.

90.    Raytheon Technologies is the parent company of UTC Fire and Security.

91.    Upon information and belief, Raytheon Company and Collins Aerospace are subsidiaries of Raytheon Technologies.

92.    **Carrier Global Corporation** ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

93.    Upon information and belief, UTC is now a division of Carrier and manufactured and sold fluorochemical products. Upon information and belief, Carrier does and/or has done business throughout the United States.

94.    Carrier inherited UTC's Fire & Security businesses, including the Chubb Fire and Kidde-Fenwal brands, when it was formed in March 2020. Carrier is now the parent corporation of Kidde-Fenwal Inc., a manufacturer fluorochemical products.

95.    **National Foam, Inc.** ("National Foam," a/k/a Chubb National Foam) is a corporation organized and existing under the laws of Delaware, having a principal place of business at 141 Junny Road, Angier, North Carolina 27501.

96.    National Foam manufactures AFFF agents, including Universal Gold and the Angus brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). At all relevant times, National Foam manufactured and sold fluorochemical products.

97.    **Chubb Fire, Ltd.** ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but

not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

98.     Chubb is part of UTC Climate, Controls, & Security, a unit of Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon").

99.     **Arkema Inc.** ("Arkema") is a corporation organized and existing under the laws of Pennsylvania, having a principal place of business at 900 First Avenue, King of Prussia, Pennsylvania 19406.

100.    Arkema develops specialty chemicals and fluoropolymers.

101.    Arkema and/or its predecessors manufactured fluorochemical products.

102.    Arkema is a successor in interest to Atochem North American, Inc., Elf Atochem North America, Inc., and Atofina Chemicals, Inc. which also manufactured fluorochemical products.

103.    **AGC Chemicals Americas, Inc**. ("AGC Americas") is a corporation organized and existing under the laws of Delaware, having a principal place of business in 5 East Uwchlan Avenue, Suite 201 Exton, Pennsylvania 19341 United States.

104.    AGC Americas and/or its affiliates operate throughout the United States, manufacturing glass, electronic displays and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates used for manufacturing PFAS for use in AFFF products and fluorochemical products.

105.    On information and belief, AGC is the North American subsidiary of AGC Inc. (f/k/a Asahi Glass, Co., Ltd.) and does business throughout the United States.

106.    **Dynax Corporation** ("Dynax") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 79 Westchester Avenue, Pound Ridge,

New York 10576 and an address for service of process at 103 Fairview Park Drive Elmsford, New York 10523-1544.

107.    On information and belief, Dynax entered the AFFF business in 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical foam stabilizers. Dynax is a manufacturer and seller of fluorochemical products.

108.    Dynax does and/or has done business throughout the United States.

109.    **Archroma U.S., Inc.** ("Archroma") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217.

110.    Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and manufactured, sold, and supplied fluorochemical products for use in AFFF sold throughout the United States. On information and belief, Archroma is a successor to Clariant Corporation, which manufactured and sold fluorochemical products.

111.    **Clariant Corporation** ("Clariant") is a corporation organized and existing under the laws of New York, having a principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

112.    On information and belief, Clariant was formerly known as Sandoz Chemicals Corporation. Clariant became Archroma Management LLC after it was acquired by SK Capital Partners and manufactured and sold fluorochemical products.

113.    **E.I. DuPont de Nemours & Company** ("DuPont") is a corporation organized and existing under the laws of Delaware, having a principal place of business is 974 Centre Road Wilmington, Delaware 19805.

114.    Since the 1950s, DuPont has been involved in the production and sale of fluorochemical intermediaries for use in AFFF manufacturing. When 3M left the market, DuPont took on a larger role in the AFFF market.

115.    DuPont has also manufactured, distributed, and sold fluorochemical products around the country pursuant to a nationwide marketing campaign.

116.    DuPont is a successor in interest to DuPont Chemical Solutions Enterprise ("DuPont Chemical"), a Delaware corporation with a principal place of business located at 1007 Market Street Wilmington, Delaware 19898.

117.    Upon information and belief, DuPont designed, marketed, developed, manufactured, distributed, released, trained users of, produced instructional materials on, sold and/or otherwise handled and/or used fluorochemical products.

118.    From 1951, DuPont designed, manufactured, marketed, and sold fluorochemical products, including Teflon nonstick cookware, and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

119.    Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and sold PFAS chemicals and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF and fluorochemical products.

120.    DuPont Chemical was a member of the Telomer Research Program ("TRP"). As a member it was required to provide a list and volume of products it was selling in the United States on a yearly basis.

121.    In a letter addressed to the Office of Pollution Prevention and Toxics (OPPT) Document Control Office, dated May 14, 2003 and signed by Stephen H. Korzeniowski, DuPont provided its Telomer-based sales products in the United States for the year 2002.

122.    The letter, which was redacted and sent to the USEPA under its PFOA Stewardship Program, included AFFF sales volume, on an active ingredient pound basis, as well as its Chemical Abstracts Service (CAS) number and chemical name, and is included in the PFOA Stewardship Program Docket.

123.    Defendants E.I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

124.    **The Chemours Company** ("Chemours") is a corporation organized and existing under the laws of Delaware, having a principle place of business at 1007 Market Street, Wilmington, Delaware 19889.

125.    Chemours was a wholly owned subsidiary of DuPont. In 2015, DuPont spun off its "performance chemicals" business, including the manufacture, sale and distribution of PFAS-containing intermediates and Fluorochemical Products, including AFFF, to Chemours along with certain environmental liabilities.

126.    Upon information and belief, at the time of the transfer of its performance chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorochemicals and the products that contain fluorochemicals.

127.    Chemours designed, marketed, developed, manufactured, distributed, released, trained users of, produced instructional materials on, sold, and/or otherwise handled and/or used fluorochemical products, including Teflon nonstick cookware, and more recently, PFAS, and PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

35

128.    **The Chemours Company FC, LLC** ("Chemours FC"), a successor in interest to DuPont Chemical, is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1007 Market Street Wilmington, Delaware 19899.

129.    The Chemours Company FC LLC is a subsidiary to The Chemours Company, which manufactured and distributed PFAS and related fluorochemicals to AFFF manufacturers.

130.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had turned over its perfluorinated chemical liabilities into the lap of the new Chemours.

131.    **Corteva, Inc.** ("Corteva") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 974 Centre Rd., Wilmington, Delaware 19805. Corteva is a successor in interest to DuPont Chemical Solutions Enterprise and holds assets and liabilities including DowDuPont's agriculture and nutritional businesses.

132.    Corteva designed, marketed, developed, manufactured, distributed, released, trained users of, produced instructional materials on, sold, and/or otherwise handled and/or used PFAS and PFAS related chemistries including those used in AFFF.

133.    **Dupont de Nemours Inc. (f/k/a DowDuPont, Inc.)** ("Dupont de Nemours Inc.") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

134.    Dupont de Nemours Inc. designed, marketed, developed, manufactured, distributed, released, trained users of, produced instructional materials on, sold, and/or otherwise handled and/or used AFFF containing PFAS chemicals.

135.    On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off Corteva.

36

136.    Prior to the separation, DowDuPont owned Corteva as a wholly-owned subsidiary formed in February 2018.

137.    On June 1, 2019, DowDuPont distributed a pro rata dividend of both issued and outstanding shares of Corteva common stock to DowDuPont shareholders.

138.    Corteva holds certain Dow DuPont assets and liabilities including DowDuPont's agriculture and nutritional businesses.

139.    On June 1, 2019 DowDuPont, the surviving entity after the spin-off of Corteva and another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines following the spin-offs, as well as the balance of the financial assets and liabilities of E.I. DuPont not assumed by Corteva.

140.    **BASF Corporation** ("BASF"), is a corporation organized and existing under the laws of Delaware, having a principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

141.    On information and belief, BASF Corporation is the successor in interest to Ciba-Geigy, Inc., Ciba Specialty Chemicals Company, and Ciba, Inc., a Swiss specialty Chemicals Company that manufactured fluorosurfactants containing PFOA used in AFFF.

142.    It was foreseeable to all Defendants that the PFAS chemicals and/or precursors or derivatives they sold into the United States would contaminate the environment, including surface and ground waters in areas where Plaintiffs have resided.

143.    Plaintiffs' unknowing consumption of water contaminated with Defendants' PFAS chemicals directly and proximately caused Plaintiffs to develop the injuries listed in Paragraphs 9

through 61 of Plaintiffs' Complaint, and to suffer severe personal injuries, pain, suffering, and emotional distress.

## FACTUAL ALLEGATIONS

### THE PER- AND POLYFLUOROALKYL CHEMICALS

144.    PFOS, PFOA, PFNA, PFBS, PFHxS and HPFO (Gen-X) fall within a class of chemicals known as per- and polyfluoroalkyl substances ("PFAS").  PFAS are found within the fluorochemical products defined above.  For purposes of this complaint, the term PFAS will refer to the chemicals detailed in this paragraph collectively as well as their precursors and derivatives.

145.    Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds, which is a reason why these molecules are so persistent.  Fluorochemical products that contain eight an eight-carbon chain are sometimes referred to as "C8".

146.    Fluorochemical products are non-naturally-occurring, man-made chemicals that were first developed in the late 1930s to 1940s and put into large scale manufacture and use by the early 1950s.

147.    Fluorochemical products are water soluble and can migrate readily from soil to groundwater, where they can be transported long distances.

148.    Fluorochemical products are thermally, chemically and biologically stable and resistant to biodegradation, atmospheric photo- oxidation, direct photolysis and hydrolysis.

149.    Fluorochemical products are readily absorbed in animal and human tissues after oral exposure, dermal exposure, and inhalation and accumulate in the serum, kidney, and liver.

150.     Fluorochemical products have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

151.     Fluorochemical products are persistent in the human body. An acute exposure can result in a body burden that persists for years and can increase with additional exposures.

152.     Water processed by typical municipal water treatment plants does not result in the removal, filtration, or treatment of fluorochemical products.

153.     Defendants marketed, developed, distributed, sold, manufactured, released, trained users on, produced instructional materials for and/or otherwise handled and/or used fluorochemical products, including in areas where Plaintiffs have resided, in such a way as to cause the contamination of Plaintiffs' public drinking water source.

154.     Prior to the commercial development and large-scale manufacture and use of fluorochemical products by Defendants, no such fluorochemical products had been found, detected or were present in the environment or Plaintiffs' drinking water supply.

155.     Defendants' manufacturing and/or distributing of fluorochemical products resulted in the release of fluorochemical products into the air, surface waters, ground water, soil and landfills.

156.     Due to Defendants' involvement and/or participating in the creation of fluorochemical products, and its involvement in the creation of instructional materials and labels for such chemicals and/or products containing fluorochemicals, Defendants knew and/or foresaw, at least reasonably should have known and/or foreseen that fluorochemical products would contaminate the environment, including but not limited to the groundwater relied upon by Plaintiffs' water suppliers.

157.     Fluorochemical products are associated with adverse side effects.

158.    Regulatory agencies throughout the world, including The United States Environmental Protection Agency ("EPA"), The World Health Organization ("WHO"), the International Agency for Research on Cancer ("IARC"), Health Canada, and numerous others have concluded that exposure to fluorochemical products is harmful to human health and cause an increased risk of certain diseases, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney, bladder), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

159.    Fluorochemical products are recognized as a likely human carcinogen.

160.    Based upon information and belief, there is no safe level of exposure to fluorochemical products.

161.    On June 15, 2022, the United States EPA issued Interim Updated PFOA and PFOS Health Advisories, which identify the concentration of chemicals in drinking water at or below which adverse health effects are not anticipated to occur. The health advisories weigh the available science and consider lifetime exposures. The EPA concluded that some negative health effects may occur with concentrations of PFOA or PFOS in water that are near zero.

162.    At the same time, the EPA also issued final health advisories for PFBS and HFPO. Current EPA Health Advisory Levels have been established at 0.004 parts per trillion (ppt) for PFOA (interim); 0.02 ppt for PFOS (interim); 10 ppt for HPFO (final), and 2,000 ppt for PFBS (final).

163.    In March of 2023, the EPA issued a proposed Maximum Contaminant Level ("MCL") of 4 ppt for PFOS and 4 ppt for PFOA as part of a proposed PFAS National Primary

Drinking Water Regulation (NPDWR). Additionally, the EPA proposed a 1.0 Hazard Index MCL to regulate any mixture containing PFNA, PFHxS, PFBS, and/or HPFO-DA (Gen-X) chemicals. EPA's proposed NPDWR was finalized in April of 2024, creating enforceable MCLs for these six PFAS chemicals.

164.    Fluorochemical products, including PFAS chemicals subject to EPA's Health Advisories and MCLs, have been detected in water supplied to Plaintiffs as a result of reasonably foreseeable use of Defendants' AFFF products and fluorochemical products, and Plaintiffs have ingested and been exposed to these chemicals for years as a result.

<b>AQUEOUS FILM-FORMING FOAM</b>

165.    AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

166.    The AFFF designed, manufactured, marketed, distributed, used and/or sold by Defendants contained PFAS, including their precursors and/or derivatives.

167.    PFOS, PFHxS, PFOA, PFBS and/or the chemical precursors to these compounds contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

168.    All other Defendants manufactured and/or used telomerized fluorochemicals and/or surfactants including PFAS precursors and intermediaries, for use in AFFF. These fluorochemicals included PFOA and/or chemical precursors and intermediaries to PFOA.  Based upon information and belief, these products did not contain PFOS, PFBS, or PFHxS.

169.    AFFF can be made without PFAS or their precursor chemicals as an active or intended component.

41

170.    AFFF can be made in a way that does not release PFAS, and/or their precursor chemicals into the environment or pose a risk to human health. Specifically, AFFF can be made with 6:2 Fluorotelomer sulfonate ("6:2 FTS"), or Perfluorohaxanoic acid ("PFHxA"), including their precursors and derivatives.

171.    Effective AFFF utilizing 6:2 FTS or PFHxA as the only PFAS is both technically feasible and economically feasible.  Based upon information and belief, AFFF utilizing 6:2 FTS or PFHxA has been commercially available since 1982.

172.    When used as the Defendants intended and directed, Defendants' AFFF releases PFAS and/or their precursor chemicals into the environment.

173.    Once PFAS are in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

174.    Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause injury and damage to Plaintiffs.

175.    Due to the persistent nature of PFAS chemicals, these chemicals are still present in Plaintiffs' bodies, causing increased risk of further injury and damage to Plaintiffs.

**DEFENDANTS' KNOWLEDGE**

176.    All Defendants have been or should have been aware of the harmful effects of PFAS chemicals to humans and the environment since at least the 1960s.

177.    By the end of the 1960s, animal toxicity testing performed by Defendants manufacturing and/or using PFAS indicated that exposure to such chemicals resulted in various

adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals and other organs and bodily systems.

178.    During this time, DuPont knew that it was contaminating drinking water drawn from the Ohio River, or recharged from the Ohio River, with PFOA. DuPont began studying the potential toxicity of PFOA, but did not disclose to the public or to government regulators what they knew about the substance's potential toxic effects on humans, animals, and/or the environment.

179.    By the at least the end of the 1970s, additional research and testing performed by Defendants indicated that PFOA, PFOS, and PFHxS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans, and remain and/or persist in the body for long periods of time. It was also known or knowable by Defendants that PFAS accumulate in the blood of exposed organisms with each additional exposure, no matter how small.

180.    By the 1980s, Defendants knew, or reasonably should have known that PFOA and PFOS were toxic.

181.    By the early 1980s, Defendant knew, or reasonably should have known that when fluorochemical products are released into the environment, that the PFAS component will readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense with additional technology and equipment.

182.    Defendants also knew or reasonably should have known that PFOA, PFHxS and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are carcinogens which cause genetic damage.

183.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

184.    By the 1980s, Defendants manufacturing and/or using PFAS, including at least DuPont and 3M, were aware that PFAS, including PFOA and PFOS, had been detected not only in the blood of workers at PFAS manufacturing facilities, but also in the blood of the general population of the United States in people not known to be working at or living near the PFAS manufacturing and/or use facilities, indicating to Defendants that continued manufacture and use of such PFAS materials would inevitability result in continued and increased levels of PFAS releasing into the environment and human blood across the United States.

185.    By the late 1980s, Defendants understood that, not only did PFAS persist and accumulate in the human body, including in human blood, but also that once PFAS is in the human body, it has a long half-life, meaning it would take years before even half of the material would be eliminated, assuming there were no additional exposures.

186.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

187.    It was understood by Defendants that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and it was known that such mechanism of action would not be operative and/or occur in humans.

188.    Upon information and belief, by at least the end of the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS chemical, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver and pancreatic) in a second chronic cancer study in rats.

189.    Upon information and belief, by at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that Defendants continue to presume that any such PFAS that caused tumors in animal studies could present a potential cancer risk to exposed humans.

190.    Once governmental entities and regulators began learning of the potential toxicity, persistence and bioaccumulation concerns associated with PFAS, Defendants attempted to prevent regulation or discontinuation of PFAS chemicals. Defendants cited to the pervasive use of such PFAS throughout numerous sectors of the American economy (which they had intentionally and purposefully encouraged and created) and the widespread presence of PFAS in blood of Americans (which they also had negligently, recklessly and/or intentional caused) as an excuse and/or reason not to restrict or regulate PFAS, essentially arguing that the issues associated with PFAS had become "too big to regulate."

191.    Based on information and belief, in 2000, under pressure from the EPA, 3M finally announced that it was phasing out PFOS and U.S. production of PFOS, in part due to the chemicals' biopersistence.

192.    Despite the concerns expressed internally within 3M and by regulatory agencies, 3M continued to encourage and promote the use of fluorochemical products in a manner that was likely to pollute the environment.

193.    Even after 2000, 3M continued to promote a false narrative that PFAS and related chemistries, including PFOA and PFOS, are safe and pose no risk to humans despite internal knowledge to the contrary.

194.    Based on information and belief, 3M's PFOS and related chemistries were not fully phased out until 2002.

195.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

196.    By at least 2010, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes and thyroid and liver impacts, which such Defendants' own scientists, lawyers and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects.

197.    By July 2011, Defendants could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and

five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

198.    After the EPA began requesting Defendants to stop manufacturing and/or using PFAS, Defendants began manufacturing and/or using other PFAS chemicals with six or fewer carbons, such as GenX, collectively known as "short chain PFAS".

199.    Additional research and testing performed by and/or on behalf of Defendants making and/or using short chain PFAS (namely PFHxS, PFBS, and HPFO) indicates that such short chain PFAS chemicals present the same, similar and/or additional risks to human health as had been found in research on other PFAS chemicals, including increased cancer risk.

200.    Despite this information, Defendants repeatedly reassured and represented to governmental entities and the public that the presence of PFAS, including these short chain PFAS, in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological or medical significance of any kind.

201.    All of the aforementioned information was known or knowable by all Defendants who manufactured, designed, marketed, sold, formulated, and/or distributed AFFF or products containing PFAS chemicals and/or its derivatives or precursors.

202.    Notwithstanding the aforementioned knowledge as to the various risk associated with PFAS exposure, Defendants continued to negligently and carelessly design, manufacture, market, distribute, and/or sell fluorochemicals for use in AFFF.

203.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated and/or otherwise influenced the information that was published in peer review journals, released by any governmental entity and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or

risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

204. At all relevant times, Defendants, through their actions and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific findings, studies, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks, and/or any other fact of legal, toxicological, or medical significance associated with PFAS.

205. At all relevant times, Defendants, through their actions and/or omissions, concealed and/or withheld information from its customers, governmental entities, and the public that would have properly and fully alerted Plaintiffs about the possible toxicological and other risks from having any PFAS in its drinking water supplies.

206. At all relevant times, Defendants, by its customers and others, encouraged the continued and/or increased use and release of PFAS into the environment, including into areas where Plaintiffs have resided, through the manufacture, use, and release of fluorochemical products despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

207. Defendants negligently and carelessly failed to issue to instruct users on how fluorochemical products should be used and disposed of.

208. Defendants negligently and carelessly failed to warn the users of fluorochemical products of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products.

209. Defendants negligently and carelessly further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the

fact that Defendants knew foreseeable the identities of the purchasers and end-users of the fluorochemical products, as well as the final fate of fluorochemical products in water and the environment, including in humans.

210.    Defendants knew and/or should have known and/or foresaw and/or should have foreseen that their marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of fluorochemical products, including AFFF containing PFAS, including in areas where Plaintiffs have resided, would result in the contamination of the blood and/or body of Plaintiffs with PFAS chemicals and the biopersistence and bioaccumulation of such PFAS in Plaintiffs' blood and/or body.

211.    Defendants knew or should have known, or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiffs would cause injury, irreparable harm, and unacceptable risk of such injury and/or harm to Plaintiffs.

212.    At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological and/or otherwise adverse effects and/or risks.

## PLAINTIFFS' EXPOSURE TO AFFF
## AND FLUOROCHEMICAL PRODUCTS

213.    Upon information and belief, Plaintiffs have received and ingested fluorochemical-contaminated water from municipal water providers.

214.    As a result of reasonably foreseeable use of Defendants' AFFF products and fluorochemical products, water supplied by Plaintiffs' aforementioned municipal water providers

is and/or was contaminated by Defendants' fluorochemical products, evidenced by publicly-available PFAS testing results.

215.    Plaintiffs regularly and unknowingly ingested Defendants' fluorochemical products through the contaminated drinking water supplied by the aforementioned water providers.

216.    Prior to Plaintiffs' diagnoses, Plaintiffs had no knowledge of fluorochemical product contamination in the aforementioned water providers' water supplies. At no point prior to their diagnoses did Plaintiffs receive any formal notice that Defendants' fluorochemical products had contaminated their water supplies.

217.    At no point while they utilized and ingested water supplied by the aforementioned water providers did Plaintiffs receive any formal notice that Defendants' fluorochemical products were toxic or carcinogenic.

218.    The Defendants knew or should have known of the hazards of AFFF and fluorochemical products when the products were manufactured.

219.    The Defendants knew or should have known of the potential for their fluorochemical products to seep into the water table and contaminate the water sources when the products were manufactured, subject to their ordinary use.

220.    Plaintiffs suffered, and continue to suffer, the effects of their injuries, including significant pain, emotional distress, and economic damages, all of which were proximately caused by exposure to Defendants' fluorochemicals.

## CAUSES OF ACTION

### COUNT I

## PRODUCTS LIABILITY – DEFECTIVE DESIGN – CONSUMER EXPECTATIONS

221.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

222.    Plaintiffs bring this cause of action pursuant to all relevant common law and state statutory provisions.

223.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

224.    At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

225.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of fluorochemicals, Defendants owed a duty to not manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

226.    Plaintiffs, and Plaintiffs' communities including fire departments and other public entities funded by Plaintiffs' tax dollars, used Defendants' fluorochemical products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

227.    Defendants' fluorochemical products fail to meet the Plaintiffs' reasonable expectation that said products are reasonably suitable and safe for human use or exposure.

228.    Defendants' fluorochemical products, when used as intended or in a reasonably foreseeable manner by Plaintiffs and Plaintiffs' communities, did not perform as safely as an

ordinary consumer would have expected because fluorochemical products are carcinogens and are otherwise harmful to human health and the environment.

229.     Defendants' defective design of the fluorochemical products was far more dangerous than an ordinary consumer, such as the Plaintiffs would expect when used, as Plaintiffs and Plaintiffs' communities did, in an intended and reasonably foreseeable manner.

230.     At all times relevant, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in the condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

231.     Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

232.     At all times relevant, these alternative designs and/or formulations were available, practical, and feasible.  These safer designs include AFFF agents utilizing 6:2 FTS, PFHxA, their precursors and derivatives, as well as other PFAS which carry a lower risk of bioaccumulation, persistence, toxicity, and otherwise pose a lower risk of contaminating drinking water supplies.

233.     The use of these alternative designs would have reduced or prevented the harm, including those reasonably foreseeable, to human health that was caused by Defendant's manufacture, marketing, and/or sale of fluorochemical products without impacting the products' utility.

234.     The risk of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to consumers or users in the vicinity of the AFFF use, including Plaintiffs, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals.  Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

235.    Defendants' fluorochemical products failure to perform safely was a substantial factor in causing Plaintiffs' harm.

236.    As a direct result of fluorochemical products being utilized as the Defendants intended, fluorochemicals were released into the environment and seeped into public water sources and were ingested by Plaintiffs.

237.    But for Defendants' fluorochemicals products failure to perform safely, Plaintiffs would not have suffered the damages alleged herein.

238.    As a direct and proximate result of Defendants' defective design, Plaintiffs have suffered and will continue to suffer damages such as medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, fear, loss of enjoyment of life, annoyance, inconvenience and other damages under the law and circumstances, which Plaintiffs are entitled to recover.

239.    As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Plaintiffs.

## COUNT II

## PRODUCTS LIABILITY – DEFECTIVE DESIGN - RISK UTILITY

240.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint as if restated fully therein.

241.    Plaintiffs bring this cause of action pursuant to all relevant common law and state statutory provisions.

242.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

243.    At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

244.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiffs, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

245.    Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of the Defendants, such that the risks, including those foreseeable, associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

246.    At all times relevant, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in the condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

247.    Defendants' fluorochemical products failure to perform safely was a substantial factor in causing Plaintiffs' harm.

248.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

249.    At all times relevant, these alternative designs and/or formulations were available, practical, and feasible.  These safer designs include AFFF agents utilizing 6:2 FTS, PFHxA, their precursors and derivatives, as well as other PFAS which carry a lower risk of bioaccumulation, persistent, toxicity, and otherwise pose a lower risk of contaminating drinking water supplies.

250.    The use of these alternative designs would have reduced or prevented the harm, including those reasonably foreseeable, to human health that was caused by Defendant's manufacture, marketing, and/or sale of fluorochemical products.

251.    The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the risks of harm, including those foreseeable, posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

252.    The risk of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to users or consumers in the vicinity of the AFFF use, including Plaintiffs, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals.  Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

253.    But for Defendants' fluorochemical products' failure to perform safely, Plaintiffs would not have suffered the damages alleged herein.

254.    As a direct result of fluorochemical products being utilized as the Defendants intended, fluorochemicals were released into the environment and seeped into public water sources and were ingested by Plaintiffs.

255.    As a direct and proximate result of Defendants' defective design, Plaintiffs have suffered and will continue to suffer damages such as medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, fear, loss of enjoyment of life, annoyance, inconvenience and other damages under the law and circumstances, which Plaintiffs are entitled to recover.

256.    As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Plaintiffs.

## COUNT III

## PRODUCTS LIABILITY – FAILURE TO WARN

257.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

258.    Plaintiffs bring this cause of action pursuant to all relevant common law and state statutory provisions.

259.    Defendants, as manufacturers and sellers of fluorochemical products had a duty to provide adequate warnings or instructions about the dangers of their products.

260.    Defendants had this duty even if the product was perfectly designed and manufactured.

261.    Defendants' warning should have been the kind of warning or instruction which a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided.

262.    Defendants' failure to adequately warn and/or instruct existed before the fluorochemical products left the Defendants' control.

263.    Defendants' fluorochemical products were not substantially altered after they left Defendants' control.

264.    Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because they are hazardous to human health and the environment.

265.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to persons, such as the Plaintiffs.

266.    Ordinary users and/or consumers of Defendants' fluorochemical products would not have recognized the risks.

267.    Defendants failed to adequately warn users and consumers of the potential risks of their fluorochemical products.

268.    Adequate instructions and warnings on the fluorochemical products could have reduced or avoided the risks, including those known, knowable, or foreseeable, to Plaintiffs' health.

269.    Had Defendants provided adequate warnings, Plaintiffs, and Plaintiffs' communities, including the fire department and other public entities which Plaintiffs' tax dollars fund, could have taken measures to avoid or lessen the exposure.

270.    Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective.

271.    The lack of sufficient warnings was a substantial factor in causing Plaintiffs' harm.

272.    Defendants' failure to warn was a direct and proximate cause of Plaintiffs' injuries.

273.    But for Defendant's failure to provide sufficient warnings regarding their fluorochemical products' unreasonable dangerousness, Plaintiffs would not have suffered the damages alleged herein.

274.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs have suffered and will continue to suffer medical and hospital bills, physical injury, economic damages,

severe emotional distress, mental pain and suffering, humiliation, fear, annoyance, inconvenience, loss of enjoyment of life, and other damages under the law, which Plaintiffs are entitled to recover.

275.    As a result of Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are strictly liable in damages to Plaintiffs.

## COUNT IV

### NEGLIGENCE

276.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

277.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of fluorochemical products, Defendants owed a duty to Plaintiffs to exercise reasonable care in the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, advertising, packaging, labeling, of and the handling, control, use and disposal of Defendants' fluorochemical products, including a duty of care to ensure that its fluorochemical products did not pollute the environment thereby contaminating Plaintiffs' public drinking water supply.

278.    Defendants also voluntarily assumed a duty towards Plaintiffs by affirmatively representing to Plaintiffs and Plaintiffs' communities, including fire departments and other public entities funded by Plaintiffs' tax dollars, that Defendants' previously detailed acts and/or omissions were not causing any physical harm or other damage to them, and that Defendants' fluorochemical products were safe to use.

279.    Defendants' fluorochemical products are inherently dangerous substances and Defendants' owed a duty of care towards the Plaintiffs that was commensurate with the harmful

nature of the fluorochemical products and the dangers involved with exposure to fluorochemical products.

280.    Defendants failed to correct, clarify, rescind, and/or qualify its representations to Plaintiffs that Defendants' acts and/or omissions were not causing any physical harm and/or damage to Plaintiffs, or that the fluorochemical products were safe to use.

281.    Despite knowing that their fluorochemical products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants failed to exercise reasonable care when they:

> (a)    Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products;

> (b)    Issued instructions on how fluorochemical products should be used and disposed of;

> (c)    Failed to recall and/or warn the users of fluorochemical products of the dangers to human health and water contamination as a result of standard use and disposal of these products; and

> (d)    Failed and refused to issue appropriate warnings and/or recalls to the users of fluorochemical products regarding the proper use and disposal of these products, notwithstanding, the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their fluorochemical products.

282.    But for Defendants' negligent acts and/or omissions, Plaintiffs would not have been exposed to unhealthy levels of fluorochemicals, thereby causing Plaintiffs' injuries.

283. Defendant's failure to act with reasonable care to (1) design a product to perform safely; (2) failure to issue an adequate warning or instruction on the use of fluorochemical products; and (3) failure to issue a recall, were substantial factors in causing Plaintiffs' harm.

284. Defendants knew or reasonably should have known that users would not realize the danger Defendants' fluorochemical products posed to human health and the environment.

285. Defendants knew or should have known that the design, manufacture, fabrication, sale, release, training users of, production of informational materials about, handling, use and/or distribution of fluorochemicals would likely result in the contamination of Plaintiffs' drinking water supply and subsequent harm suffered by Plaintiffs.

286. A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

287. Defendants' negligent acts and omissions directly and proximately caused Plaintiffs' illnesses alleged above, and continue to directly and proximately cause damage to Plaintiffs in the form of severe personal injuries, pain, suffering, and emotional distress.

288. Plaintiffs are reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiffs' present and past injuries directly and proximately caused by Defendants' negligent acts or omissions.

289. It has been reasonably foreseeable to Defendants for at least several decades that Defendants' negligent acts and/or omissions would directly and proximately cause bodily injury and economic damage to Plaintiffs including the injuries and damages that Plaintiffs suffer.

290. The acts and omissions of Defendants were negligent, and as a direct and proximate result Plaintiffs, has suffered and will continue to suffer damages, including medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering,

humiliation, fear, annoyance, inconvenience, loss of enjoyment of life and other damages under the law and circumstances, which Plaintiffs are entitled to recover.

291.    As a result of Defendants' negligence, Defendants are liable to Plaintiffs in damages.

## COUNT V

### GROSS NEGLIGENCE

292.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

293.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, users and/or marketers of fluorochemical products, the Defendants owed a duty to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that their fluorochemical products did not pollute the environment thereby contaminating Plaintiffs' public drinking water supply.

294.    Defendants owed a duty of care that was commensurate with the inherently dangerous, harmful and toxic nature of fluorochemical products.

295.    Defendants failed to exercise ordinary care or diligence by acts and/or omissions that resulted in the contamination of Plaintiffs' public drinking water supply with fluorochemical products.

296.    Despite knowing that their fluorochemicals are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants breached their duty of reasonable care when they designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products.

297.    Defendants breached their duty of reasonable care when they issued inadequate instructions on how fluorochemical products should be used and disposed of.

298.    Defendants further breached their duty of reasonable care when they failed to warn the users of AFFF of the dangers to human health and water contamination as a result of standard use and disposal of these products.

299.    Finally, Defendants breached their duty of reasonable care when they failed and refused to issue the appropriate warnings to the users of fluorochemical products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of its fluorochemical products.

300.    Defendants were conscious of the dangers of fluorochemical products and were conscious that bodily injury to Plaintiffs would or was likely to result from the fluorochemical products and Defendants' negligent acts and/or omissions.

301.    Defendants knew, foresaw, anticipated, and/or should have foreseen, anticipated, and/or known that the design, engineering, manufacture, fabrication, sale, release, training of users of, production of informational materials about, handling, use, and/or distribution of fluorochemical products and/or other acts and/or omissions could likely result in the contamination of Plaintiffs' public drinking water supply and subsequent physical harm suffered by the Plaintiffs.

302.    Defendants knew or reasonably should have known that people reasonably expected to come in contact with Defendants' fluorochemical products or their derivatives would not realize the danger Defendants' product posed to human health.

303.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

304.    Each of the aforementioned acts and/or omissions demonstrates Defendants' lack of scant care and total indifference to the safety of others.

305.    Defendants' failure to act with the slightest reasonable care to (1) design a product to perform safely; and (2) issue an adequate warning or instruction on the use of products containing fluorochemical products were substantial factors in causing plaintiffs' harm.

306.    Defendants' grossly negligent conduct was the direct and proximate cause of the injuries and harm to Plaintiffs as described herein.

307.    Defendants' grossly negligent acts and/or omissions were a substantial factor in causing Plaintiffs' exposure to unhealthy levels of fluorochemical products, and subsequent harm.

308.    Plaintiffs are reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiffs' present and past injuries directly and proximately caused by Defendants' grossly negligent acts or omissions.

309.    As a direct and proximate result of the Defendants' grossly negligent conduct, Plaintiffs have suffered and will continue to suffer damages, including medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, embarrassment, fear, loss of enjoyment of life, annoyance, inconvenience and other damages under the law and circumstances, which Plaintiffs are entitled to recover.

<u>**COUNT VI**</u>

**NEGLIGENT MISREPRESENTATION**

310.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

311.    For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' fluorochemicals were causally connected with or could increase the risk of

causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to fluorochemical products and physical injuries in humans and animals.

312.    Defendants had a duty of care to disclose to consumers and the public, including the Plaintiffs, the actual and potential risks of continuing exposure to and/or ingestion of fluorochemicals.

313.    Defendants breached this duty by negligently withholding, misrepresenting, and/or concealing information regarding the dangers of Defendants' fluorochemical products from Plaintiffs and the public at large, who had a right to know of information which would have prevented Plaintiffs from being exposed and/or continuing to be exposed to Defendants' fluorochemical products.

314.    Defendants negligently represented to the public and regulatory authorities that fluorochemical products were safe for the environment and posed no risk of harm to people.

315.    Consumers and end-users of Defendants' fluorochemical products reasonably relied upon Defendants' statements in continuing to use these products in the manner instructed or directed by Defendants.

316.    As a result of this reliance, fluorochemicals were dispersed into the environment contaminating drinking water supplies, including the Plaintiffs'.

317.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendant, Plaintiffs unknowingly ingested Defendants' fluorochemicals and developed the injuries listed in Paragraphs 9 through 61.

318.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs suffered damages, therefore, Defendants are liable to Plaintiffs.

## COUNT VII

### FRAUDULENT CONCELAMENT

319.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

320.    For at least several decades, Defendants were aware of the bio-accumulative and bio-persistent nature of the fluorochemicals they manufactured.

321.    Defendants were also aware of fluorochemicals' potentially harmful effects to humans.

322.    Despite knowledge of the risk of fluorochemical products they manufactured, Defendants falsely represented to consumers, regulators and the public that its products were safe for the environment and posed no risk of harm to people.

323.    The safety risks associated with fluorochemicals and fluorochemical containing products, like AFFF, are material facts.

324.    Defendants knew this information was false.

325.    Defendants knowingly, intentionally, maliciously, and/or willfully failed and/or refused to advise Plaintiffs and the public of the dangers and/or health risks posed by Defendants' fluorochemicals.

326.    Defendants knowingly, intentionally, maliciously, and/or willfully deceived the Plaintiffs by alleging Defendants' fluorochemicals were harmless to human health.

327.    Defendants intended to deceive the public, including the Plaintiffs, when they made the aforementioned false representations and withheld information regarding the risks of fluorochemical product use and exposure and/or ingestion of fluorochemicals.

328.    Consumers and end-users of Defendants' products reasonably relied upon Defendants' statements in continuing to use these products.

329.    As a result of this reliance, fluorochemical products and fluorochemicals were dispersed into the environment contaminating drinking water supplies, including the Plaintiffs'.

330.    Had the Plaintiffs known that these fluorochemical products, such as AFFF, were contaminating his drinking water, they could have taken steps to reduce or prevent his exposure. However, since the Plaintiffs were not aware of these risks, or that the contamination was occurring, they were unable to take any actions to reduce or prevent their exposure.

331.    As a direct and proximate result of the Defendants' concealment of the safety risks associated with their fluorochemical products, Plaintiffs were unknowingly exposed to fluorochemicals for years and developed the injuries listed in Paragraphs 9 through 61 of Plaintiffs' Complaint, and suffered and continue to suffer severe personal injuries, pain, emotional distress, and economic loss.

332.    Defendants are liable in damages to the Plaintiffs.

## COUNT VIII

### NEGLIGENCE PER SE

333.    Plaintiffs incorporate herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

334.    Plaintiffs bring this cause of action pursuant to all relevant common law and state statutory provisions.

335.    One or more federal statutes, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, impose duties of

care on Defendants with regard to Defendants' actions and/or omissions towards Plaintiffs and/or Plaintiffs' safety.

336.    By Defendants' acts and/or omissions resulting in harm to Plaintiffs, Defendants' violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, constituting negligence per se, including liability for all injuries to Plaintiffs associated with the fluorochemical products.

337.    Defendants' violation of law and breach of its statutory duties directly and proximately caused and continue to directly and proximately cause damage to Plaintiffs in the form of economic damage and bodily injury for which Defendants are liable.

## COUNT IX

### PAST AND CONTINUING TRESSPASS AND BATTERY

338.    Plaintiffs incorporate herein by reference each and every paragraph of this Complaint as though set forth in full in full therein.

339.    Defendants have known for several decades that their fluorochemical products are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

340.    Despite such knowledge, Defendants continued to use and sell the fluorochemical products, which caused harmful physical contact with Plaintiffs.

341.    Defendants' continued actions with knowledge that such actions will result in harmful physical contact with Plaintiffs demonstrate intent and/or reckless indifference by Defendants without regard to the harm they have caused and will cause.

342.    Defendants' intentional acts and/or omissions have resulted in fluorochemical products, in the body of Plaintiffs or otherwise unlawful and harmful invasion, contact, and/or presence of fluorochemical products in Plaintiffs' bodies, which interferes with Plaintiffs' rightful use and possession of Plaintiffs' bodies.

343.    The fluorochemicals present in Plaintiffs' bodies originating from Defendants' fluorochemical products was at all relevant times hereto, and continues to be, the property of Defendants.

344.    The invasion and presence of the fluorochemical products in and/or on Plaintiffs' bodies was and continues to be unconsented and without permission or authority from Plaintiffs or anyone who could grant such permission or authority.

345.    Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of fluorochemical products onto, and/or into Plaintiffs' bodies were substantially certain to result from those acts and/or omissions.

346.    Harmful contact with Plaintiffs' bodies was the direct and/or indirect result of Defendant's intentional acts and/or omissions.

347.    The presence and continuing presence of the fluorochemical products in Plaintiffs' bodies is offensive, unreasonable, and/or harmful and constitutes a continuing and/or permanent trespass and battery.

348.    Defendants' past and continuing trespass and battery upon Plaintiffs' bodies directly and proximately caused and continues to directly and proximately cause damage to Plaintiffs in the for which Defendants' are liable including medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, recurrence,

humiliation, fear, annoyance, inconvenience, loss of enjoyment of life and other damages under the law and circumstances.

## COUNT X

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

349.    Plaintiffs incorporate herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

350.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller and/or marketer of fluorochemical products, the Defendants owed a duty to exercise reasonable care in the designing, instructing, labeling and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that fluorochemical products did not pollute the environment thereby contaminating Plaintiffs' public drinking water supply.

351.    Defendants owed a duty of care that was commensurate with the inherently dangerous, harmful, and toxic nature of their fluorochemical products.

352.    Defendants failed to exercise ordinary care by acts and/or omissions that resulted in the contamination of Plaintiffs' public drinking water supply with their fluorochemical products.

353.    Specifically, Defendants negligently polluted the environment, despite Defendants knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm when ingested, such as Plaintiffs did.

354.    Defendants' acts and/or omissions were negligent, including Defendants' continued pollution of the environment and resultant exposure of Plaintiffs to harmful fluorochemical products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiffs.

355.    At the time of Defendants' negligent acts and/or omissions, it was foreseeable to Defendants and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to those exposed to fluorochemicals, including Plaintiffs.

356.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and continue to cause emotional suffering and distress, to Plaintiffs.

357.    Defendants' acts and/or omissions were a substantial factor in causing Plaintiffs to suffer severe physical, mental, and emotional distress.

358.    As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Plaintiffs have and will continue to suffer severe physical, mental, and emotional distress.

359.    No reasonable person could be expected to endure the mental anguish caused by the knowledge that Defendants have negligently exposed them to years of harmful contact with Defendants' fluorochemical products, including PFOA or PFOS and/or their precursor chemicals, and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

360.    Defendants' negligent actions were a substantial factor in causing Plaintiffs' severe physical, mental and emotional distress.

361.    Defendants are liable in damages to Plaintiffs.

## COUNT XI

## INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

362.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

363.    Defendants' acts and/or omissions were intentional and/or reckless including Defendants' continued pollution of the environment and resultant exposure of harmful fluorochemical products to the Plaintiffs, despite Defendant knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiffs.

364.    Defendants knowingly and/or intentionally withheld and concealed material information and/or affirmatively misrepresented that fluorochemical products were not causing or creating any risk of harm to the human body and environment, despite knowing at the time these concealments and/or misrepresentations were made that the fluorochemical products were causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiffs.

365.    At the time of Defendants' knowing and/or intentional acts and/or omissions, it was foreseeable to Defendants, and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to those exposed to fluorochemical products, including Plaintiffs.

366.    Defendants' acts and/or omissions were extreme, outrageous, intolerable and/or offended the generally accepted standards of decency and morality.

367.    By continuing to expose Plaintiffs to harmful fluorochemical products and continuing to misrepresent that the fluorochemical products were not harmful and would not cause risk of harm and/or continuing to withhold and/or conceal material information on such issues, despite knowing that the fluorochemical products were causing and would continue to cause harm and/or risk of harm, Defendants acted in an extreme, outrageous and intolerable manner which offended any generally accepted standard of decency and morality.

368.   Defendants' acts and/or omissions resulting in defendants' concealment and/or misrepresentations, directly and proximately caused physical harm and continue to cause physical harm, to Plaintiffs.

369.   Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and continue to cause emotional suffering and distress to Plaintiffs.

370.   Defendants' extreme, outrageous and intolerable actions were a substantial factor in causing Plaintiffs to suffer severe physical, mental and emotional distress.

371.   No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities having knowingly and/or intentionally exposed them to years of harmful contact with fluorochemical products and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

372.   As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Plaintiffs will continue to suffer severe physical, mental and emotional distress.

## COUNT XII

## CLAIM FOR PUNITIVE DAMAGES

373.   Plaintiffs hereby re-allege and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

374.   At all times relevant to the present cause of action, Defendants manufactured, marketed, and sold the fluorochemical products that that contaminated Plaintiffs' drinking water and that resulted in the physical bodily injuries that Plaintiffs have suffered and will continue to suffer.

375.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that their fluorochemical products and/or its precursors were toxic chemicals capable of causing harm to human health.

376.    Rather than disclose this information to the public or provide warnings and/or instructions on its products that address this information, Defendant concealed the risks of fluorochemical products and actively represented that fluorochemical products did not present a risk of harm to the environment or human health.

377.    Defendants continued to manufacture, sell, market, distribute, design, formulate and/or supply fluorochemical products for years after learning of the significant risks to the environment and human health.

378.    Defendants' failure to disclose the information regarding the risks of fluorochemical products and their failure to provide adequate warnings and/or instructions as to these risks demonstrate Defendants' reckless disregard for the safety and welfare of the public, including the Plaintiffs.

379.    Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act caused Plaintiffs to be exposed to fluorochemical products.

380.    Plaintiffs are entitled to punitive damages because Defendants engaged in willful, wanton, malicious, fraudulent and/or reckless conduct, which includes but is not limited to:

> (a)    Issuing no warnings and failing to divulge material information concerning the release of fluorochemical products, including but not limited to PFOA and PFOS;
>
> (b)    Failing to take all reasonable measures to ensure fluorochemical products would be used effectively and properly disposed of;

(c)     Failing to prevent the foreseeable impacts of fluorochemical products exposure upon the Plaintiffs; and

(d)     Willfully withholding, misrepresenting, and/or concealing information regarding the releases of fluorochemical products release and exposure from Plaintiffs, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their exposure to fluorochemical products chemicals was not harmful, and to mislead and/or defraud them into continuing to purchase and consume drinking water contaminated with fluorochemical products chemicals.

As a proximate and foreseeable consequence of Defendants' negligent, reckless willful, fraudulent and/or wanton actions and/or intentional failures to act, Plaintiffs ingested unreasonably dangerous, toxic, fluorochemical products contaminated water which caused him to suffer bodily injuries.

381.    As a result of Defendants' conduct, Plaintiffs have been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' fluorochemical products and will continue to suffer serious, debilitating, and severe bodily injuries, mental anguish, and emotional distress relating to Plaintiffs' bodily injuries caused by Defendants' fluorochemical products.

382.    Defendants have demonstrated a conscious disregard for the physical safety of Plaintiffs and acted with implied malice, warranting the imposition of punitive damages.

383.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court

should award the Plaintiffs punitive damages in an amount sufficient to deter and punish such conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants, each of them, jointly and severally, and request the following relief from the Court:

> (a)    Compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law, that exceed the jurisdictional limit of this Court;

> (b)    Punitive damages in an amount sufficient to punish Defendants and deter future similar conduct;

> (c)    Reasonable fees for attorneys and expert witnesses;

> (d)    Costs and disbursements of this lawsuit;

> (e)    Interest on the damages according to law; and

> (f)    Any other and further relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

Dated: 04/25/2025                                Respectfully submitted,


/s/ Roopal P. Luhana, Esq.

Roopal P. Luhana, Esq.
Luhana@chaffinluhana.com
NY Bar No. 4127841

Eric T. Chaffin, Esq.
Chaffin@chaffinluhana.com
NY Bar No. 4148136
Nicholas R. Farnolo, Esq.
Farnolo@chaffinluhana.com
NY Bar No. 4605952
Julia A. Merritt, Esq.
Julia.Merritt@chaffinluhana.com
GA Bar No. 159038
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, New York 10016
(888) 480-1123 telephone
(888) 499-1123 facsimile

*Counsel for Plaintiffs*